And the court will proceed to the next case, Burris v. Smith. Mr. Stevenson. Thank you. Good morning, your honors. May it please the court, Adam Stevenson on behalf of Donovan Burris. This case saw evidence on behalf of the defense. In fact, it was significant evidence on behalf of the defense of after-the-fact conduct that showed regard for human life. The jury, in fact, asked twice whether and how it could consider this exact evidence. And in response to those two questions, the trial court here issued a supplemental instruction, including after-the-fact regard for human life does not negate utter disregard otherwise established by the circumstances before and during the crime, as well as it does not operate to preclude a finding of utter disregard for human life. Shortly thereafter, that same day, the jury came back with a verdict that, in fact, Mr. Burris showed and demonstrated utter disregard for human life. Yet the Wisconsin Supreme Court said there was no reasonable likelihood that this instruction led the jury to be precluded from considering constitutionally relevant evidence, that being the after-the-fact conduct that was a significant portion of the defense's case at trial. And in fact, looking at the totality of the evidence, which the jury did not have any evidence of, and assessing whether there's a reasonable likelihood that the jury was misled, there were statements made about how Mr. Burris was actively carrying a firearm, potentially waving it around. But that was also impeached on cross-examination with prior inconsistent statements about, no, he actually held it down at his side, and that the victim, Kamal, in this case, lunged at Mr. Burris, and that led to the after-the-fact conduct, that Mr. Burris knelt down to Kamal to check on his condition, that he was so emotionally distraught, in fact, that he handed the firearm over to the victim's mother and said, take my life. He was so emotionally distraught at what had just occurred, and saying he didn't mean to do so, and yet he essentially tried to commit suicide due to his just extreme emotional reaction. And yet what the Wisconsin Supreme Court did here is it took this absolutely misleading instruction, saying that after-the-fact conduct could not preclude otherwise found conduct, and it doesn't... Excuse me, counsel. Didn't the Wisconsin Supreme Court tell us that was a legally accurate instruction? It was legally accurate in that it quoted verbatim from Jensen, a sufficiency of the evidence case, the language used in that case. So it was legally accurate in that context, but in the context of whether the jury could consider after-the-fact conduct, and I guess the weight that after-the-fact conduct could receive, it was not accurate. And in fact, the Wisconsin... Wait a second. It sounds like you're asking us to disagree with the Wisconsin Supreme Court on a question of Wisconsin law. No, Your Honor. I thought we had to treat that instruction as accurate. The Wisconsin Supreme Court did not find that the instruction was accurate in this case. In fact, it said that it was at a minimum potentially ambiguous. It actually directed or suggested that the State Jury Instruction Committee revise the instructions to make sure that the same situation didn't occur again, and in fact, the jury committee did eventually do so, specifically with regard to this case. It did add in additional instruction where if there is after-the-fact conduct presented at trial, that a supplemental instruction to the pattern jury instruction should be given that after-the-fact conduct should be considered in a totality of the circumstances review, and again, the jury's free to give whatever weight and credibility it so chooses, but it is considered as a totality of the circumstances, whereas the instruction that was cited, again, legally accurate and in quoted verbatim from Jensen, but inapplicable to this situation, says that after-the-fact conduct does not negate conduct otherwise found. In essence, it's shifting the burden away from the State, if not towards the defendant, almost in a manner of an affirmative defense. Well, isn't there a problem here, though, because after-the-fact evidence here could actually cut both ways, right, including the five months as a fugitive? Respectfully, Your Honor, we would disagree. With regard to the fugitive and with regard to the flight which the State briefs and which the Wisconsin Supreme Court knows, at best, what that shows is desire not to be apprehended, acknowledgment that someone committed a crime, and even without finding utter disregard here, there was a crime committed of second-degree reckless injury. It doesn't necessarily show utter disregard for human life that there was no care given to what had occurred and otherwise. But what was shown was the extreme emotional response, the kneeling by the victim, the statements of didn't mean to do it. And again, given especially that what led up to the shooting, there was disagreement. Mr. Burris testified that he put the firearm under a bed during initial parts of the conversation and only retrieved it later on, as well as the fact that the victim in the case lunged at Mr. Burris, and that's what led to the shooting. Again, the family members testified on direct that, no, in fact, Mr. Burris maintained possession of the firearm throughout the incident, that he was waving it around. But again, on cross-examination, that was impeached by prior inconsistent statements to law enforcement about how, no, Mr. Burris wasn't waving the firearm around, it was at his side, about how Kamal, in fact, did lunge at Mr. Burris, and there was an altercation, a physical altercation that led to the firing of the weapon. The one consistent point with regard to the entirety of the case was the after-the-fact conduct, and that's what led the jury to ask the two questions it did. And again, shortly after the jury asked the questions, the instruction was given. Shortly after the instruction was given, the jury came back with a finding and a verdict that said Mr. Burris demonstrated utter disregard. Given that the instruction is so misleading with regard to whether the jury could possibly consider after-the-fact conduct, and that it is a totality of the circumstances, it's a part of the totality of the circumstances, it, frankly, defies belief to say that there is no reasonable likelihood that the jury could have misapplied what was the accurate law, that it could consider after-the-fact conduct as a part of the totality of the circumstances, and that the jury could give whatever weight it saw fit, not to say that it had to give a certain amount of weight. In fact, the instruction arguably told the jury, you have to give this less weight, obviously less weight than during the offense or pre-offense conduct, and that's not the accurate statement. Let me just ask you to address what is the core of the problem for me. We have the Wisconsin court telling us this was misapplying the totality of the circumstances, citing and quoting the correct U.S. Supreme Court cases on this point, and concluding that although there was some room for ambiguity here, it just didn't see this prospect. Why is that an unreasonable application of the Boyd and Sorosad cases, or is it an unreasonable application of something else? Specifically with regard to Sorosad, I think that's actually instructive here. Sorosad dealt with jury questions just like this, and I think that's an important similarity in that in Sorosad, the court pointed out that there was no other alternative interpretation to give the instruction in that case that could have led to the jury being misled. Here, I think, given the supplemental instruction in this context, the likelihood was significantly greater. Again, the Wisconsin Supreme Court acknowledged that at a minimum, it was potentially ambiguous, again, instructing the jury committee to revise the instruction to avoid just this type of situation again. And the unreasonable application is that the Wisconsin Supreme Court largely ignored the jury questions. Instead, considered the context with a searching inquiry towards could it support the verdict the jury actually came back with, instead of was there a reasonable likelihood that the jury was misled and precluded from considering constitutionally relevant evidence. Thank you. Thank you, Mr. Stevenson. Ms. Schaefer? Good morning. My name is Sarah Schaefer. I'm an assistant attorney general for the state of Wisconsin, and I represent the respondent in this case. The issue for this court today is whether the Wisconsin Supreme Court unreasonably applied controlling federal case law when it determined that Mr. Burris failed to meet his burden of proving that there's a reasonable likelihood that the jury misapplied the jury instruction in an unconstitutional manner. I'm here today requesting that this court affirm the district court which found that there was nothing objectively unreasonable with the Wisconsin Supreme Court's resolution of this matter. There are just a few points I wanted to discuss. The Wisconsin Supreme Court's analysis and application of Waddington and Sowers-Rod was methodical. It was well thought out. It discussed the cases combined 15 times. It was not a cursory analysis or application of those cases to the facts of this case. It first determined burden, it determined ambiguity, and then it determined was there a reasonable likelihood that the jury misapplied this instruction in an unconstitutional manner. And when it looked at that, it looked at Boyd and it looked at Waddington and it says, well, what are we supposed to consider? Well, according to these cases, we look at the jury instruction, we look at the other jury instructions, and we look at the totality of the record in this case showed utter disregard during, before, and after the conduct. The petitioner argues in his brief that there is a reasonable reading or potential reading that this jury instruction somehow told the jury that it was to give less weight to the conduct after the shooting. And that is not the standard that the Supreme Court has said he needs to prove. It's his burden. There's a reasonable likelihood that the jury misapplied the instruction. He failed to do that. Finally, the jury instructions in this case more than once discussed reasonable doubt and it put that reasonable doubt on the state. It's document 1512. It says the state has to prove every element of this case. The burden is on the state to prove every element of first degree reckless injury. And again, towards the end of the instructions, it again, it discusses reasonable doubt and it says the burden is on the state to prove reasonable doubt in every element of the case. Just to address opposing counsel's facts about utter disregard, the state concedes that there was evidence that he had remorse that it lasted for a long time. It lasted for a minute. That was mitigating evidence, but there was also aggravating evidence. He did flee. He testified that the victim asked him to stay. He says, I can't. I picked up the gun and he fled. So there was, the jury was able to weigh both sets of the story and it was also under the jury instruction to consider post, during, and prior conduct of utter disregard. And it did so and it found him guilty beyond reasonable doubt because the state's proved its case. That's all the state has, unless this court has questions. Thank you, Ms. Schiff. Mr. Stevenson. Thank you, Your Honors. Just a few points. Counsel for the state just indicated that the jury was instructed with regard to the state's burden and Mr. Burris doesn't agree. But what's important, and again, what the Wisconsin State Supreme Court did not give any weight to the state's burden. It did in a sufficient way, too, but what the dissent did then, Chief Justice Abrahamsen, was with regard to the questions. The questions are demonstrative that what came before the questions, asked quickly, repeatedly, and then led to the supplemental instruction, was unclear. And the United States Supreme Court has said that an instruction or direction from the court that doesn't give clarity when a jury asks a question is of no aid. And I think that goes back to Waddington versus Sarasout is that the instruction there was instructive. The United States Supreme Court said there was no reasonable alternative meaning that could be given to that instruction other than that given by the Washington courts and what actually followed the law. Here, that's not the case. Here, given the language of the supplemental instruction, it was reasonable, it was misleading that the jury could give totality of the circumstances, even weight, or whatever weight it sought fit to after the fact. Mr. Stevenson, assuming that there's an erroneous state court instruction, can that be the basis for federal habeas relief after Gilmore? Yes, Your Honor. Yes, it can. Again, under the due process line of cases, yes. Thank you, Your Honors.